IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 1:97-cr-108-01** |
| | : | |
| **v.** | : | |
| | : | |
| **RICHARD LYMAN PITT,** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

Before the court is Defendant Richard Lyman Pitt's motion for compassionate release. (Doc. 527.) For the reasons set forth below, the motion will be granted.

## I.   BACKGROUND

In 1997, Mr. Pitt was convicted by a jury of conspiracy to distribute and possess with intent to distribute approximately 486 kilograms of cocaine, distribution and possession with intent to distribute approximately 150 kilograms of cocaine, and conspiracy to commit money laundering. The charges arose from Mr. Pitt receiving and transporting large quantities of cocaine across the country at a time when he also worked as a documented confidential informant for the U.S. Customs Service.

To determine Mr. Pitt's guideline range, the probation office calculated his offense level at 46, which defaulted to 43, based on the quantity of drugs, the presence of firearms, Mr. Pitt's role as a leader, and his conduct threatening a witness. (PSR ¶¶ 19-27.) Mr. Pitt's criminal history category was II based on a

Florida conviction in 1992 for trafficking cocaine. (*Id.*, ¶¶ 32, 35.) As a result, Mr. Pitt's guideline range was life in prison. (*Id.*, ¶ 57.)

Under the sentencing scheme in place at the time, *see* 18 U.S.C. § 3553(b)(1), the court was required to, and did, follow the guideline range and sentence Mr. Pitt to life. The Supreme Court has since struck down the relevant provision of the Sentencing Reform Act of 1984 that made the guidelines mandatory and declared them to be effectively advisory. *United States v. Booker*, 543 U.S. 220, 230 (2005). Thus, while Mr. Pitt's guideline range would still be life in prison were he convicted today, the court would not be required to impose that sentence.

On April 13, 2020, Mr. Pitt filed a *pro se* motion for compassionate release. (Doc. 517.) The court appointed the Federal Public Defender's Office as counsel (Doc. 518), which filed a supplemental motion for compassionate release. (Doc. 519.) By memorandum and order dated May 1, 2020, the court denied the motion without prejudice because it found that Pitt failed to exhaust his administrative remedies. (Docs. 525, 526.) As the parties agree (*see* Doc. 532, p. 6), Mr. Pitt has since properly exhausted his remedies by submitting to the warden a request for compassionate release based on his age, time served, medical conditions, the COVID-19 pandemic, and other grounds, which the warden rejected. (Doc. 528-2.)

On July 2, 2020, Mr. Pitt filed his present motion for compassionate release. (Doc. 527.) The government responded in opposition (Doc. 532) and Mr. Pitt replied (Doc. 533). The matter is thus ripe for review.

## II.   **STANDARD OF REVIEW**

Under 18 U.S.C. § 3582(c)(1)(A), a defendant may move the sentencing court to reduce his or her term of imprisonment. To do so, the defendant must first request that the Bureau of Prisons file such a motion on his or her behalf, and may only move after he or she has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

If the defendant complies with this exhaustion requirement, the court may reduce his or her term of imprisonment, after considering the factors set forth in 18 U.S.C. § 3553(a), if the court finds that extraordinary and compelling reasons warrant such a reduction, and that the reduction is consistent with the applicable policy statements by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A)(i). Under the Sentencing Commission's relevant policy statement, the court must also find that the defendant is not a danger to the safety of any person or the community as provided in 18 U.S.C. § 3142(g). USSG § 1B1.13.2 Medical conditions that qualify as "extraordinary and compelling reasons" include:

(1) suffering from a serious physical or medical condition,
(2) suffering from a serious functional or cognitive impairment, or
(3) experiencing deteriorating physical or mental health because of the aging process

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii).

The policy statement also provides that extraordinary and compelling circumstances exist where the defendant is at least 65 years old, experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less. *Id.,* § 1B1.13, cmt. n.1(B).

Finally, the policy statement contains a catchall provision setting forth that extraordinary and compelling circumstances may exist for a "reason other than, or in combination with" the aforementioned reasons. *Id.*, § 1B1.13, cmt. n.1(D). This catchall provision allows courts to assess whether extraordinary and compelling circumstances exist independent from those enumerated reasons set forth in the policy statement. *See United States v. Rodriguez*, No. 2:03-CR-00271, --- F.Supp.3d ----, ---- 2020 WL 1627331, at *4 (E.D. Pa. Apr. 1, 2020) (collecting cases); *United States v. Lisi*, --- F.Supp.3d ----, ----, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020); *United States v. Lavy*, No. 17-20033, 2020 WL 3218110, at *3–4 (D. Kan. June 15, 2020) ("[A] growing consensus of courts across the country have concluded

that, after the First Step Act, the Commission's policy statement 'does not constrain

a court's independent assessment of whether 'extraordinary and compelling reasons'

warrant a sentence reduction under § 3852(c)(1)(A).'").

## III.   **DISCUSSION**

Mr. Pitt has shown extraordinary and compelling circumstances that justify a

reduction in sentence to time served based on a multitude of factors considered

together, including his age, medical conditions, the dangers presented by the

COVID-19 pandemic, and his extraordinary rehabilitation efforts during his 22 years

of incarceration.

First and foremost, Mr. Pitt's elderly age of 71 supports extraordinary and

compelling circumstances in light of the current COVID-19 pandemic. The CDC

has made clear that "the risk for severe illness from COVID-19 increases with age,

with older adults at highest risk." CDC, Coronavirus Disease 2019 (COVID-19),

Older Adults, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

precautions/older-adults.html. In addition to the risk of severe illness, elderly people

like Mr. Pitt are also most likely to die from the virus: "8 out of 10 COVID-19-

related deaths reported in the United States have been among adults aged 65 years

and older." *Id.*

Crucially, Mr. Pitt's risk of contracting COVID-19 is also far from theoretical

given the current outbreak of the virus at his institution USP Lewisburg, where

eighteen inmates and one staff member are currently infected with COVID-19, and thirty-four inmates and one staff member have recovered from the virus. Federal Bureau of Prisons, COVID-19 Coronavirus, *available at* https://www.bop.gov/coronavirus. The court need not belabor the point, but to say the least, prisons are ill-suited for social distancing and incarcerated persons generally face a substantial risk of contracting the virus. *See e.g., United States v. Somerville*, No. 2:12-CR-225, --- F.Supp.3d ----, 2020 WL 2781585, at *9 (W.D. Pa. May 29, 2020) ("Even under normal circumstances, "'[p]risons are tinderboxes for infectious disease.'") (quoting *Rodriguez*, 2020 WL 1627331, at *1). Mr. Pitt's elderly age in the wake of the unprecedented COVID-19 pandemic and his institution's present outbreak of the virus thus support finding extraordinary and compelling circumstances.

The record shows that Mr. Pitt also suffers from various medical conditions, including prostate issues and heart conditions such as bradycardia (slow heartrate) and a first-degree atrioventricular block in his heart. He has a history of osteoarthritis of the hip, kidney stones, and hyperlipidemia. On February 24, 2020, during his most recent medical appointment reflected in the record, Mr. Pitt reported "frequent forgetfulness" and said that he was "concerned ab[o]ut my memory." The provider recommended testing for dementia. Mr. Pitt also complained during the appointment that his "hands, right should, and knees have been aching. It's worst in the morning

and when I get up and exercise it feels better." He was diagnosed with an unspecified joint disorder. Mr. Pitt has not shown that these conditions place him at particular risk for suffering severe illness from COVID-19, and his heart conditions in particular do not fall within those enumerated "serious" heart conditions that the CDC has listed as increasing a person's risk of severe illness of the virus. *See* Centers for Disease Control, People of Any Age with Underlying Medical Conditions, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Nevertheless, the court takes Mr. Pitt's medical records for what they are worth: some minimal evidence of poor health consistent with the aging process.

Mr. Pitt's substantial efforts at rehabilitation further support finding extraordinary and compelling circumstances. Mr. Pitt has spent his long time incarcerated bettering himself, by working as a forklift mechanic (Doc 528-3, p. 13), receiving multiple certifications in the area of refrigerant recovery and recycling (*id.*, pp. 10-11), and completing more than 40 educational courses on a multitude of subjects including anger and stress management, infectious disease prevention, algebra, welding, and history (*id.*, pp. 1, 7). That work came despite Mr. Pitt's expectation that he would never be released. Equally important, Mr. Pitt has spent his time incarcerated helping others, including by volunteering to teach French

classes and assisting other inmates with his time and skills as a metal craftsman and welder repair technician. (*Id*., pp. 8, 13.)

Letters from Mr. Pitt's supervisors paint the picture of a responsible, mature, generous, and productive man. (*See id*.) One supervisor describes him as a "model inmate." (*Id*., p. 13.) It does not appear that Mr. Pitt has any history of serious disciplinary issues or infractions throughout his decades of incarceration, and while rehabilitation alone does not constitute extraordinary and compelling circumstances, Mr. Pitt's exemplary conduct throughout his extended period of incarceration, considered together with the other factors outlined by the court, support finding extraordinary and compelling circumstances. *See Rodriguez*, 2020 WL 1627331, at *10 (finding extraordinary and compelling circumstances due in part to the defendant's post-offense rehabilitation and noting that "rehabilitation *alone* would not constitute an extraordinary and compelling reason. But the qualifier 'alone' implies that rehabilitation can contribute to extraordinary and compelling reasons. That is how the Commission has understood the statute") (citing U.S.S.G. § 1B1.13 cmt. n.3 ("Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, *by itself*, an extraordinary and compelling reason for purposes of this policy statement.") (emphasis in *Rodriguez*); *see United States v. Poole*, No. 2:02-CR-20026, 2020 WL 4192280, at *6 (W.D. Tenn. July 14, 2020) ("Poole's rehabilitation is a consideration. During his time in prison, Poole has had no incident reports and

has made strong rehabilitation efforts. This weighs in favor of relief.") (citing *Rodriguez*; *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019) ("[A]lthough 'rehabilitation ... is not, by itself, an extraordinary and compelling reason,' the Commission implies that rehabilitation may be considered with other factors.") (quoting U.S.S.G. § 1B1.13 cmt. n.3).

The government is correct that the compassionate release statute envisions sentence reductions "for specific individuals" and not "the widespread prophylactic release of inmates" in the wake of the COVID-19 pandemic (Doc. 532, p. 10), but far more than a generalized risk is at play here. Mr. Pitt suffers a high risk of severe illness from the virus and is incarcerated at an institution that presents a serious threat of exposure, and he has shown himself dedicated to leading a more productive life. The court thus finds that extraordinary and compelling circumstances exist in accordance with Section 1B1.13 Comment. n.1(D) of the United States Sentencing Guideline, which authorizes release based on "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described."

The court also finds that Mr. Pitt will not pose a danger to the safety of others or the community. Under Section 1B1.13 of the United States Sentencing Guidelines, a term of imprisonment should only be reduced if the defendant "is not a danger to the safety of any other person or to the community, as provided in 18

U.S.C. § 3142(g)." Section 3142(g) sets out various factors to consider in making this determination, including (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the defendant, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history"; and (3) the nature and seriousness of the danger to any person or the communication that would be posed by the defendant's release.

At 71 years old, Mr. Pitt is unlikely to reoffend. Older offenders are substantially less likely to recidivate as compared with younger offenders. United States Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders, *available at* https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders. "Over an eight-year follow-up period, 13.4 percent of offenders age 65 or older at the time of release were rearrested compared to 67.6 percent of offenders younger than age 21 at the time of release." *Id.* Mr. Pitt's offense and criminal history involving drug trafficking are troubling, but they occurred more than 26 years ago. Mr. Pitt has served substantial time behind bars and has done so commendably by bettering himself and helping others. A multitude of letters submitted to the court also show that Mr. Pitt has a strong support system among his friends on the outside, including those that have agreed to accept responsibility for assisting him with reentry. (Doc. 528, pp. 11-12.) Mr. Pitt

previously detailed his plans for release in a request to the warden that outlined his intent to live with a lifelong friend in Florida, avail himself of programs and medical benefits offered to veterans, and secure employment in the electrical field. (Doc. 519-1; *see also* Doc. 528, pp. 11-12.) He has numerous marketable skills (*see* Doc. 528-3) and does not appear to have any history of drug or alcohol addiction (*see* PSR ¶ 46). Any risk of harm to the community will be further mitigated by this court's order imposing 60 months of supervised release. The court therefore finds that Mr. Pitt will not pose a danger to others or the community.

The factors outlined in Section 3553 also support reducing Mr. Pitt's sentence to time served. Under 18 U.S.C. § 3553(a), the court considers multiple factors, including, among other things, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed ... to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed ... to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

The nature and circumstances of Mr. Pitt's offense were serious and involved large quantities of drugs. His offense conduct was non-violent, however, and the sentence enhancement he received for the involvement of a firearm was attributable to actions by one of his co-conspirators. (PSR ¶ 5.) *See United States v. Pitt*, 193

F.3d 751, 764 (3d Cir. 1999). Most importantly, Mr. Pitt has already served 22 years in prison to atone for his conduct—far from a lenient drug-related sentence. That extended period of incarceration is sufficient to reflect the seriousness of the offenses, provide just punishment and adequate deterrence, and promote respect for the rule of law. Mr. Pitt should not die in jail for his decades-old drug crime and prolonging his incarceration under the circumstances would run afoul Section 3553(a)'s directive to "impose a sentence sufficient, but not greater than necessary to comply with" the statutory purposes of punishment. Finally, no additional incarceration is necessary to protect the public from further crimes because, as discussed above, Mr. Pitt's advanced age, his substantial rehabilitation, and his sixty-month sentence of supervised release make recidivism unlikely.

## IV.   **CONCLUSION**

For the reasons outlined above, the court will grant Richard Lyman Pitt's motion for compassionate release and reduce his sentence to time served. An appropriate order shall follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: August 12, 2020.